Plaintiff's Name Victor Charles Fourstar, Jr.
Inmate No. 07418-046
Address United States Penitentiary-Atwater, P.O.Box019001, Atwater, Ca. 95301

FILED
JAN 2 2 2015
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case: 1:15-mc-00076
Assigned To : Unassigned
Assign. Date : 1/22/2015
Description: Unassigned

VICTOR CHARLES FOURSTAR, JR.
(Name of Plaintiff) (Case Number)

vs. COMPLAINT

GARDEN CITY GROUP; JULIA CHAVEZ; U.S. DEP'T. OF INTERIOR; OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS; R.S. CHESTER; AMY R. BLENSLAP; RHONDA KNUDSEN; JON TESTER; JOHN WALSH; SALLY JEWELL; LARRY ROBERTS; Arnt T. Stafne; Patt Iron Cloud;
(Names of Defendant(s) Continued on Page Attachment)

Bivens Action [403 U.S. 388 (1971)]; AND RICO COMPLAINT

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A. Have you brought any other lawsuits while a prisoner? Yes ✓ No ___

B. If your answer to A is yes, how many? Eleven
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.) See, Page Attachment

1. Parties to this previous lawsuit: First prior lawsuit;

Plaintiff Victor Charles Fourstar, Jr.

Defendants Terry L. Boyd, Sr.; Freedom Crawford; Francis Rattling Thunder; Melvin Clark

2. Court (if Federal Court, give name of District; if State Court, give name of County) Montana U.S. District - Great Falls Division

3. Docket Number CV-04-93-SEH 4. Assigned Judge Sam E. Haddon

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?) Dismissed. Appealed. Appeal dismissed pursuant to Ninth Circuit USCA Local Rule 42-1

6. Filing date (approx.) June 20, 2004 7. Disposition date (approx.) July, 2008

RECEIVED
DEC 19 2014
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

RECEIVED Mail Room
DEC 19 2014
Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

PAGE ONE CONTINUATION PAGE; PREVIOUS LAWSUITS:

Second prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. David Ness; and Alison McPeet
2. Court and case number: Montana U.S. District Court (Great Falls Division), Case No. CV-05-108-SEH
3. Result: Dismissed. Appealed to Ninth Circuit USCA (No. 06-35576). Affirmed.

Third prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Steven Murlak, etal.
2. Court and case number: California U.S. District Court, case No. 2:07-cv-05892
3. Result: Dismissed. Appealed to Ninth Cir. USCA (10-56006), remanded. Dismissed, appealed, affirmed. Cert. filed in U.S. Supreme Court (No. 10-11265), cert. denied.

Fourth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Kevin Eckroth, etal.
2. Court and case number: Pennsylvania U.S. District Court - M.D. of Pa., 3:12-cv-0615
3. Result: Dismissed. Appealed to Third Cir. USCA (No. 12-2195), affirmed. Appealed to U.S. Supreme Court, denied. Motioned for Rehearing (U.S. Sup. Ct., No. 13-5285), Pending

Fifth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Susan Brown, etal.
2. Court and case number: Arizona U.S. District Court - S.D. of AZ., 4:11-cv-230-FRZ
3. Result: Dismissed. Appealed to Ninth Circuit USCA, No. 11-16386, Affirmed. Appealed to U.S. Supreme Court, cert. denied

Sixth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Mary L. Zemyan
2. Court and case number: Montana USDC - Great Falls Division, No. 4:08-cv-50-GF-SEH
3. Result: Dismissed. Appealed to Ninth USCA, No. unassigned - Appeal dismissed because docketing and filing fee not paid / IFP denied

Seventh prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. J.L. Vidrine, etal.
2. Court and case number: Indiana USDC - S.D. of IL., No. 06-cv-916
3. Result: Dismissed. Appealed to Seventh Cir. USCA, No. 07-3687. IFP denied, dismissed.

Eighth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Mary L. Zemyan

2. Court and case number: Montana 15th Judicial District Court-Roosevet County, No. DV 09-53; Montana U.S. Supreme Court, No. DA 13-0659; and contained in Victor C. Fourstar, Jr. v. Robert Farley, U.S. Supreme Court, No. 14-5501 (Sixth Cir. USCA, No. 13-5669)

3. Result: Dismissed. Appealed to Montana Supreme Court, remanded in part, affirmed in part. Dismissed, appealed to Montana Supreme Court, affirmed. Appealed to Sixth Circuit USCA, dismissed. Appealed to U.S. Supreme Court, cert. denied. Motioned for Rehearing, pending.

Ninth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Jacqueline DeCon, etal.

2. Court and case number: Montana U.S. District Court-Great Falls Division, No. 4:13-CV-93-DWM

3. Result: Dismissed/denied IFP; appealed to Ninth Circuit USCA (No. 13-36138), affirmed. Motioned for rehearing, ignored by court. Appealed to U.S. Supreme Court, denied. Motioned for Rehearing, pending.

Tenth prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Montana Child Enforcement Division

2. Court and case number: Montana 15th Judicial District Court, Roosevelt County, No. DR-14-15

3. Result: Pending

Eleventh prior lawsuit:

1. Parties: Victor C. Fourstar, Jr. v. Fernando Costello, etal.

2. Court and case number: United States District Court - S.D. of IL., Case No. 14-957-NJR

3. Result: Dismissed/IFP denied. Appealed, pending

Names of Defendants, Continued from Page 1:

John Weeks, Rick Kirn, Tom Christian, Stacey Summers, Pearl Hopkins, Garrett Big Leggins, Ed Bauer, Roxanne Gourneau, Marva Firemoon, Terry Rattling Thunder, Grant Stafne, Dana Buckles, Charles Headdress, Howard Bemer, Rhonda Knudsen, Ed Persian, Sharon Red Thunder, Debbie Colgan, Steve Daines, Robert Magnan, Montana Dep't. of Fish, Wildlife Federation, Larry Wetsit, InterTribal Bison Council, Jeff Hunt, Forest Smith, Bureau of Indian Affairs Rocky Mountain Regional Office, Bureau of Reclamation, TransCanada-Keystone XL Pipeline, David Goldwyn, Barack Obama, Environmental Protection Agency, Bill

Names of Defendants, Continued from Page 1:

Cassidy, Senate of Indian Affairs, Tammy Baldwin, John Barraso, mark Begich, maria Cantwell, Thad Cochran, mike Crapo, Dianne Feinstein, Al Franken, martin Heinrick, Heidi HeitKamp, Dean Heller, Mazie Hirono, Jim Inhofe, Tim Johnson, Tim Kaine, Ed markey, Jeff merkley, Jerry moran, Patty Murray, Harry Reid, Debbie Stabenow, Brian Schatz, John Thune, Tom Udall, John Walsh, Ron Wyden, Melissa Schlichting, Brian Kuntz, Eugene Stump, Patty mcGeshick, Glen meir, Vernone Buerkle, Alex Estavez, Lucas Strommen, Wayne Ship, Christopher Richter, Jeff Kent, Charles Tuggle, mitchell Willet, David moon, Derek Werner, Steven Nard, Lynwood Bateman, Seth Adams, Zack miller, Colleen Timmins, Derek Schuler, Jason Frederick, John Summers, Cory Reum, Tim Lingle, Clay mcGeshick, Orin Cantrell, William Black Dog, Curtis Holum, Joe moore, Eugene Culbertson, Eric Nelson, Pat O'Conner, Steve Barr, Jeff Harada, Brian Erwin, Ryan Michaelson, Alisha Corpron, mehsin Wehbe, Lowell Boyd, Ray Lamb, Sharon Dschaik, unknown Roosevelt County Disaster and Emergency Services Coordinator, James Summers, Fort Peck Housing Authority, mike mathews, Xanthia Sioux Goodtrack, mathew Tracy Bell, Tyler Don Reum, Josie Rae Stone, Doris Headdress, Isaac Lilley, Derrick Long Hair, Jerrid mudgett, Bonnie menz, Ennis Russell, Bill Young, Bureau of Indian Affairs, Federal Bureau of Investigations, RJ Young, Eldena Bear Don't Walk, Edward Bach, Jaronn Boysun, martin Dewitt, Tracey Juve-miranda, Brent Nygard, Janice Wemmer-Kegley, Joseph Paine, Cheri' Nygard, Naomi Erickson, Connie Neubauer, Jennifer Zimmerman, Richard Desch, Greg moniz, Scott Edmundson, Kristi Lepper, Patricia Toavs, Kim Hanks, Susan C. Brown, Edith Allen, Rebecca Fritz, Jennifer Medicine Cloud, Kathy Rauch, Rainy Azure, Cathy madison, Paige Viaton, Kelli Vine, Kim Beckers, Daisha Douglas, Dianne Hoversland, Jocelyn Peters, Connie Bergen, maureen Piersak, Dinne Tayler, Vicki Bisbee, Vicky Boysun, Ashley Fleming, Jane Janssen-Huber, Judy Leddige, Joelle Page, Stephanie Paine, Catherine Peterson, Connie Zimmerman, AJ Allen, Joel Bergen, Rosalie Juve, Rosie Kurokawa, Penny Olson, Leanne Smith, Taunya Wasser, Angela Bates, Kathy Denny, Linda martinez, Corrine Smith, Sue Toavs, Julie Wehbe, Hannah Nieskens, Kathryn Adkins, Amanda Campbell, melissa Dewitt, Holly Girard, William MacDonald, Lee Vandall, Jana Elliott, Emily Hamilton, Rona Stevens, Jim marmon, June Petrik, Thomas Olsen, Barbara Olson, John Sweet, Sharri Vandall, Clarice Charette, Ann Landsrud, Aubreigh Solberg, Deb Greenwood, Tiffany Szymanski, Fern Follett, Sonia Martell-Hawk, Cheryl Taylor, Pat Vine, melanie Blount-Cole, Michael MacDonald, Karli madison, Jeff mcmorris, Robin Hayes-Hernandez, Patrice McDonald, Jessica Sweet, Agboola Aliu, megan Helmer, Connie Lambert, Bryan Stormer, David Booke, Linda Cacopardo, Karla mcGill, Teresa Romo, Lynne monson, Vivian Schultz, Erin Fosland, martin J. To-

avs, Robert Clifford Page, melissa Cromwell, mike Erickson, Dannielle Solberg, Pam murawski, Eric Peterson, Joyce Ragland, maxine Strader, merle Zilkoski, James macDonald, Shirley Vandall, Peggy Tolan, Carol Wallette, Arden DeWitt, michelle Eanes, Christie Ferdina, Charlene Cheek, Ramey Escarcega-Growing Thunder, Viola Wood, Kim Harding, Francis LaBounty, Gilbert Fish, Georgianne Fish, Denise Juneau, Barack Obama, Peg Norgaard, Cleo Cagel, Elaine Long, Julie Bemer, John Gilbert, Kayt Whitebird, Tara Spradly, Carla Lovan, Barbara Toves, Charles Headdress, Marva Firemoon, Dale Dysinger, Linda Brown, Jasmine Azure, Barbara Smith, Teila Kreusel, Rita Hopkins, William Bemer, Lisa Sun Rhodes, manju Schorr, matt Taylor, Susie Perry, Jackie Hippe, Rose Akers, Yvette Roubideaux, Pamvala Bing Perry, Nonette Brown, Renee martell, Conrad Scott, montana State Legislatures Unknown, Roosevelt County

## II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes ✓ No___

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes___ No ✓

If your answer is no, explain why not Not applicable to the Prison administrative Remedy Program, but the Administrative procedure in Cobell v. Salazar have been exhausted and "opt out" filed on December 3, 2014. On December 4, 2014 "Comments" filed with Fort Peck-BIA Superintendent Howard Bemer Re: Programmatic Environmental Assessment, and Objections To Proposed Code Of Ethics filed with Jackie Weeks, Tribal Secretary on October 21, 2014

C. Is the process completed?

Yes ✓ If your answer is yes, briefly explain what happened at each level.
To the extent applicable. Related claims have been exhausted and claims filed in the U.S. District Court-E.D. of Ca. in Victor C. Fourstar, Jr. v. Paul Copenhaver, Case No. 1:14-cv-01456-BAM and 1:14-cv-01486-MJS

No___ If your answer is no, explain why not.

**NOTICE:** Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

III. **Defendants**

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant *Garden City Group* is employed as *Administrators for Indian Trust settlement case* at *Dublin, Ohio*

B. Additional defendants *Julia Chavez - U.S. Dept. of Interior, office of The Special Trustee For American Indians; R.S. Chester - Administrative Law Judge, Probate Hearings And Appeals and Amy R. Bleken-SLAP; Rhonda Knudsen and Howard Bemer, Fort Peck Agency Bureau of Indian Affairs Superintendents; JON TESTER & JOHN WALSH, MT. SENATORS; SALLY JEWELL - U.S. SECRETARY OF INTERIOR; Larry Roberts - BIA Deputy secretary* *(Defendants, Continued On Page Attachment)*

IV. **Statement of Claim** *#1*

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

*1.) On December 3, 2014 the Plaintiff Victor Charles Fourstar, Jr. (Fourstar) and other Montana Native American Roy Oliver Campbell filed Request(s) For "Opt out" via Certified mail # 7010 3090 0000 5021 4198 in Indian Trust Settlement case Cobell v. Salazar, 5151 Blazer Parkway, Suite A, Dublin, OH. 43017, and alleged the proceedings are in violation of his Treaty rights, rights under the Just Compensation Clause and Fourteenth Amendment of the U.S. Constitution, and were designed to deny Fourstar standing in his Indian Probate proceedings In the matter of The Estate of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U008298, PROBATE: P0000 95667IP, Billings, Montana office of Hearings And Appeals - Probate Hearings Division, and were designed to deny Fourstar standing in his related federal Bivens-RICO Complaint Victor C. Fourstar, Jr. v. Jacqueline Decon, et al., U.S. Supreme Court, No. 14-5500. In opting out of all class(es) preserved all rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty with right to pursue herein claims with other person(s) who have also opted out against the government on all Admini-* *(FACTS, continued on Page Attachment)*

V. **Relief.**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.) *On all Claim(s) #1-6:*

*The Plaintiff Fourstar demands a jury trial on all claims, declaratory and injunctive relief from the policies at bar, equitable tolling, class certification with other action to be filed — Roy O. Campbell v. Garden City Group, et al., and class certification and intervention all other case(s) in this court of common law and fact as case at bar, and on all claims the Plaintiff demands 2.3 Billion compensatory damages, 12 Billion punitive damages for pain and suffering and wrongful death, accrued interests from 2009 - September 15, 2014 in all class(es) in Cobell v. Salazar Indian Trust Settlement case, intervention into Shane M. Sandcrane v. Ricardo Martinez, et al., Montana U.S. District Court (Billings Division), Case No. CV 14-124-BLG-SPW-CSO, and class certification and intervention into all other cases and native americans who have, are, or will be harmed by the policies, practices, or patterns at bar herein, and for the court to supply a STAMP FILED copy of Complaint, and other appropriate relief.*

I declare under penalty of perjury that the foregoing is true and correct.

Date *December 16, 2014* Signature of Plaintiff *[signature]* *VICTOR C. FOURSTAR, JR.*

*attached, Certificate of service & Mot. To Proc. IFP*

(Revised 2/15/2006)

CERTIFICATE OF SERVICE

I, Victor C. Fourstar, Jr., hereby swears and declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that I mailed this original BIVENS ACTION [403 U.S. 388 (1971)] AND MOTION TO PROCEED IFP on this 16th day of December, 2014 by pre-paid First Class Postage through USP-Atwater, Ca. legal mail procedures [Houston v. Lack, 101 L.Ed. 2d 245 (1988)] to the following:

Office of the Clerk, Angela D. Caesar
United States District Court
For The District of Columbia
333 Constitution Ave., N.W.
Room 1225
E. Barrett Prettyman U.S. Courthouse
Washington, D.C. 20001

[signature]
VICTOR C. FOURSTAR, JR.

CLAIM #1, FACTS Continued:

strative claims.

2.) On September 8, 2014 Fourstar filed via Certified Mail #7013 1090 0001 2559 3787 a "Petition For Rehearing In Accordance With Provisions Of 43 C.F.R. §30.238 And Indian Probate Act And other Acts" in the matter of the Estate of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U00-8298, PROBATE: P0000 95667IP, with the U.S. Dep't. of the Interior, Office of Hearings And Appeals, Probate Hearings Division, R.S. Chester-Administrative Law Judge, 2718 Montana Ave., Suite 300, Billings, MT. 59101 (406)657-6960 FAX: (406)657-6966. Fourstar alleged new evidence that he was unable to present evidence of a on-going common scheme by the Montana federal and State Court(s) and Administrator(s) to deny him standing in said indian probate proceedings prior to the issuance of the August 22, 2014 Findings of Fact And Conclusions of Law by Administrative Law Judge/defendant R.S. Chester, who acting as a federal agent/administrator and with a deliberate indifference did cause Fourstar to be denied rights under the 1851 and 1868 Fort Laramie Treaties, Sweet Grass Treaty, & under 5th & 14th Amendments of U.S. Constitution, and rights under Clean Water Act, and did cause Fourstar to be denied standing in his Administrative claim(s) in the Cobell v. Salazar Indian Trust Settlement case under the Historical Accounting Class, Trust Administration Class, Trust Fund Administration Class, Land Administration Class, and Settlement Proceeds To the Estates or Heirs of Deceased Class members of Both the Historical And Trust Classes. Defendant Chester's scheme was perpetrated by defendant Amy R. Blenkenslap who acted as a federal administrator did act with a deliberate indifference to Plaintiff Fourstar's rights by wrongfully mailing the August 22, 2014 "Notice To All Persons Having or Claiming An Interest In the Subject Matter Of This Proceeding" and August 22, 2014 "Decision" to Fourstar at: Victor Charles Fourstar, Jr., c/o Judy Red Boy, P.O. Box 252, Wolf Point, MT. 59201 with intent to impede and delay Fourstar's ability to fully and fairly exercise his probate claims filed on November 24, 2011 and November 30, 2011. Defendant(s) Chester and Blenkenslap did cause Fourstar to unfairly be denied standing in his related federal Bivens-RICO complaint Victor C. Fourstar, Jr. v. Jacqueline Decon, etal., U.S. Supreme Court, Case No. 14-5500 and/or case at Victor C. Fourstar, Jr. v. Garden City Group, etal..

3.) On September 15, 2014 defendant(s) Garden City Group and R.S. Chester and Amy R. Blenkenslap acting as federal administrator(s) and with a deliberate indifference & in on-going scheme did violate Plaintiff's rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and under the Just Compensation Clause and Fourteenth Amendment of the U.S. Constitution and under Fourstar's related indian Probate proceedings "In The matter Of The Estate Of: Victor Charles Fourstar, Sr., Deceased Fort

Peck Indian, Identification No.: 206U008298, PROBATE: P000D95667IP, and rights under related federal Bivens-RICO complaint Victor C. Fourstar, Jr. v. Jacqueline Decon, etal, U.S Supreme Court, No. 14-5500, and rights under case at bar Victor C. Fourstar, Jr. v. Garden City Group, etal., in delayed payment of $868.00 to the Plaintiff's Trust Administration Class where the Cobell v. Salazar award was for 3.4 Billion dollars, but only (w/out interests) $1.4 Billion was distributed to the class members. The balance is being exploited on the speaking circuit by those who are selling the idea that the defendants Garden City Group did something wonderful for Indian Country. Several national conferences are had charging participants to hear "key" participants, or experts, in the Settlement explaining the good and bad of the settlement. Arguments that should be exercised in a court of competent jurisdiction rather than in the court of public opinion. And, on July 8, 2014, acting as federal administrators and acting with a deliberate indifference to the Plaintiff Fourstar's rights the defendants Dep't. of the Interior issued a press release touting their transferring of $2.9 million to the Cobell Education Scholarship Fund ("CESF") to be administered by the American Indian College Fund. This CESF is based on a formula tied to how much Indian land is acquired by the Land Buy Back Program, however the U.S. Government is already required by treaty to fund the Indian scholarship fund to tribes. A ruse designed to reduce the already and rapidly declining scholarship funding. CESF is not being funded by the Cobell settlement, but rather by defendant Dep't. of Interior contributions. On September 10, 2014 Montana/Northern Cheyenne Indian Shane Michael Sandcrane filed a federal Bivens-RICO complaint of common law and fact in the Billings, MT. U.S. District Court entitled Shane M. Sandcrane v. Lori Suek, etal., Case No. CV14-124-BLG-SPW-CSO (alternate case title Shane M. Sandcrane v. Ricardo Martinez, etal, Case No. CV14-124-BLG-SPW-CSO), that alleges, in part, defendant(s) Garden City Group, etal., acted in a on-going common scheme to delay and distribute unfairly low Cobell v. Salazar Indian Trust Settlement awards, and a scheme to assist the U.S. Dep't. of Interior, Montana Indian Tribal leaders, Montana and Wyoming large land base tribes and Senators to wrongfull drill oil and coal mines in "high risk" Indian lands. On December 22, 2014 Montana/Blackfeet Indian Roy Oliver Campbell will file in this Court a Bivens-RICO Complaint of common law and fact entitled Roy O. Campbell v. Garden City Group, etal., Case No. Not Yet Assigned, acted in a on-going common scheme to delay and distribute unfairly low Cobell v. Salazar Indian Trust Settlement awards, and a scheme to assist the U.S. Dep't. of Interior, Montana Indian Tribal leaders, Montana and Wyoming large land base tribes and Senators to wrongfully drill oil and coal mines in "high risk" Indian lands, and claims similar to the foregoing claims. After Fourstar filed related motion under Fed. Civ. R. Proc. Rule 41(a)(2)(D) in the Sixth Circuit U.S. Court of Appeals in §2241 Petition Victor C.

Fourstar, Jr. v. Robert Farley, No. 13-5669, and in the Ninth Circuit U.S. Court of Appeals in related federal Bivens-RICO Complaint Victor C. Fourstar, Jr. v. Jacqueline Decon, etal., case No. 13-36138, acting in a on-going common scheme the federal and state court(s) and Administor(s) strategically placed Shane M. Sandcrane on a institutional transfer the very following morning on October 28, 2014 @ 6:30 a.m. before Sandcrane could "opt out" in the Cobell v. Salazar Indian Trust Settlement case, especially egregious where only a couple days prior on October 25, 2014 Sandcrane was advised via telephone by his mother that she received on Sandcrane's behalf his $868.00 Trust Administration Class award (where defendants Garden City Group hand delivered Fourstar to him at his cell door on October 6, 2014 @ 8:30 am via USP-Atwater, Ca. administor Ms. Gilbert, which Fourstar duly "Rejected"). Fourstar's Rule 41 filing was further material to Sandcrane's' attorney abandonment claims, claims Sandcrane was unable to take to the Montana Supreme Court in Montana State Court Legal Malpractice Complaint Shane M. Sandcrane v. Vernon E. Woodward, etal., Montana 13th Judicial District Court, Yellowstone County, due to the hasty October 28, 2014 institutional transfer.

4.) On or about October, 2012 after the Plaintiff Victor C. Fourstar, Jr.'s (Fourstar) Tribe "Fort Peck Assiniboine & Sioux" received $75 million from the "Salazar Settlement", the Defendant Garden City Group acting as federal administrators for Cobell v. Salazar, and defendant U.S. Dep't. of Interior acting as federal wards for the Fort Peck Tribes did act with a deliberate indifference and acted in a on-going common scheme to violate Fourstar's rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, and under the Just Compensation Clause and Fourteenth Amendment of the U.S. Constitution, & did deceitfully tell the Fort Peck Tribal council to use the $10 million it set aside from the $75 million from the "Salazar Settlement" and buy back as much fee land with the false promise of reimbursement upon distribution of the Cobell v. Salazar Indian Trust Settle "Land Buy Back" awards. Only after the $10 million was spent on that purpose did the Defendants Garden City Group and Dep't. of Interior tell the council that they were not going to be reimbursed for land purchased and caused the Plaintiff Fourstar to be deprived of $10 million dollars from the "Salazar Settlement".

5.) On or about November 7, 2012 defendant(s) Arnt T. Stafne, Patt Iron Cloud (who replaced former Tribal vice-chair Anne Lambert), John Weeks, Rick Kirn, Tom Christian, Stacey Summers, Pearl Hopkins, Garrett Big Leggins, Ed Bauer, Roxanne Gourneau, Marva Firemoon, Terry Rattling Thunder, Grant Stafne, Dana Buckles, and Charles Headdress, Garden City Group and the U.S. Dep't. of Interior, acting as federal employees, agents and administrators, did act in a on-going common scheme and

with a deliberate indifference to the Plaintiff' Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, and under the Just Compensation Clause and Fourteenth Amendment of the U.S. Constitution by using Fourstar's October, 2012 "Salazar Settlement" awards of $75 million dollars (which the Tribal council allege $10 million spent on purchasing fee lands in anticipation of being reimbursed by Garden City Group disbursement of Cobell v. Salazar Indian Trust awards Land Buy Back Program) to increase tribal council wages from $57,241.60 a year to $68,057.60, or $261.76 per day for Chairmans salary (Arnt T. Stafne). The Vice Chair Patt Ironcloud salary was increased from $53,071.20 a year to $59,113.60, which figures out to $227.60 a day. The Sgt.-At-Arms John Weeks and Tribal Council members (Rick Kirn, Tom Christian, Stacy Summers, Pearl HopKins, Garrett Big Leggins, Ed Bauer, Roxanne Gourneau, Marva Firemoon, Terry Rattling Thunder, Grant Stafne, Dana Buckles, Charles Headdress) increased their salaries from $49,899.20 to $56,692.80 a year, which figures out to $218.08 a day. The scheme caused Fourstar to be denied $10 million of the $75 million "Salazar Settlement" awards.

6.) On April 20, 2011, the Defendant(s) Rhonda Knudsen, Howard Bemer (who replaced Rhonda Knudsen), Ed Persian, Garden City Group, U.S. Dept. of Interior, Bureau of Indian Affairs Office of the Special Trustee For American Indians, R.S. Chester acting as federal agents, administrators, and employees did intentionally and knowingly act in a on-going common scheme and with deliberate indifference to the Plaintiffs' Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, and under the Just Compensation Clause and Fourteenth Amendments of the U.S. Constitution by delaying Fourstar's claims under the Historical Accounting class, Trust Administration Class, Trust Fund Administration class, Land Administration class, settlement Proceeds To The Estates Or Heirs Of Deceased class members of Both the Historical And Trust Classes until September 15, 2014 and causing the Plaintiff to be denied claims under said class(es) in the Cobell v. Salazar Indian Trust Settlement case, and caused Fourstar to be denied Probate claims on August 22, 2014 In The matter Of The Estate Of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U008298, PROBATE: P0000 95667 IP U.S. Dep't. of the Interior, Office Of Hearings And Appeals, Probate Hearings Division, 2718 Montana Ave., Suite 300, Billings, Montana 59101, which in turn caused Fourstar to be denied said claims in said Cobell v. Salazar classes and caused Fourstar's claims under the Cobell v. Salazar case to sit idle without bearing interest earned from March, 2011 – September 15, 2014, and during the course of the instant proceedings.

7.) On or about September, 2012 the Defendant(s) Rhonda Knudsen, Howard Bemer (who replaced

Rhonda Knudsen), Ed Persian, Garden City Group, U.S. Dep't. of Interior, Bureau of Interior, Bureau of Indian Affairs Office of the Special Trustee For American Indians, R.S. Chester, Arnt T. Stafne, Patt Iron Cloud (who replaced former Vice-chair Anne Lambert), John Weeks, Tom Christian, Stacey Summers, Pearl Hopkins, Garrett Big Leggins, Ed Bauer, Roxanne Gourneau, Marva Firemoon, Terry Rattling Thunder, Grant Stafne, Dana Buckles, and Charles Headdress, acting as federal employees, agents & administrators did act intentionally and knowingly and in a on-going common scheme and with a deliberate indifference in their individual and or offical capacity to violate the Plaintiff Victor G. Fourstar, Jr.'s rights under the Fifth Amendment Just Compensation Clause and Fourteenth Amendments of the U.S. Constitution by authorizing a talking of real property of Fourstar's without just compensation from the escheating to the Fort Peck Indian Tribes the land of plaintiffs' decedent. The Tribal Executive Board defendant(s) in September, 2012 illegally passed a resolution that disclaimed any interest in any trust land either surface or mineral owned by a deceased tribal enrolled member of the Fort Peck Indian Reservation Joseph Clark, an amended resolution that states: "all interest of less than five percent (5%) be escheated to the Fort Peck Assiniboine and Sioux Tribes," thus rendering section 2206 of the Indian Land Consolidation Act, 25 U.S.C. §2201-2210 **in violation** of Plaintiff rights under the 5th and 14th Amendments of the U.S. Constitution. The Indian Land Consolidation Act provides: "No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribes jurisdiction shall descend [by intestacy or devise] but shall escheat to that tribe if such interest represents **two percentum or less** of the total acreage in such tract and has earned to its owner less than $100.00 in the preceeding year before it is due to escheat. 96 Stat. 2519. Id., at 709. Congress made no provision for the payment of compensation to the owners of interests covered by Section 207". The Fort Peck Tribes September, 2012 amended resolution enables the defendant(s) Rhonda Knudsen, Howard Bemer, Garden City Group, U.S. Dep't. of Interior, BIA and R.S. Chester to deprive Plaintiff just compensation by depriving him of rights under the 14th Amendment of the U.S. Constitution in his Indian Probate proceedings In the Matter Of the Estate of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U 008298, PROBATE: P0000 95667 IP, Billings, MT. Office of Hearings And Appeals - Probate Hearings Division, and in Plaintiff's proceedings under Cobell v. Salazar Indian Trust Settlement under the case's Historical Accounting Class, Trust Administration Class, Trust Fund Administration Class, Land Administration Class, and Settlement Proceeds to the Estates To The Estates Of Heirs Of Deceased Class members Of Both The Historical And Trust Cases. On November 4, 2014

Defendant Garden City Group violated Plaintiffs' rights and sovereignty under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty by refusing to allow and/or forcing the Plaintiff to take the Historical Accounting class stating: "By law, you could not exclude yourself from the Historical Accounting Class if you are a member. You could only have excluded yourself from the Trust Administrative Class." - the administrative law judge based his decision on that of the TEB.

8.) On or about September, 2014 Defendant(s) Fort Peck Tribal Boardmembers Arnt T. Stafne, Patt Iron Cloud, Rick Kirn, Tom Christian, Stacey Summers, Pearl Hopkins, Garrett Big Leggins, Ed Baur, Roxanne Gourneau, Marva Firemoon, Terry Rattling Thunder, Grant Stafne, Dana Buckles, Charles Headdress, Howard Bemer, Rhonda Knudsen, and Defendant Garden City Group, and Defendant Debbie Colgan (Land Buy Back Program Director) and Defendant Sharon Red Thunder (LBBP employee) acting as federal agents, administrators, and employees did intentionally and knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, and under the Just Compensation Clause of the Fifth Amendment and Fourteenth Amendment of the U.S. Constitution by misusing and failing to properly distribute the Plaintiff's awards under the Indian Trust Settlement case Cobell v. Salazar in using Land Buy Back Program funds to purchase the Poplar, MT. home of Gerald Johnson and his late wife Debbie Johnson for $80,000 after it was awarded to their children Charles G. Johnson and Jeri Ann Johnson. The home sits on tribal land and the amount is the purchase price of the home. At a October 13, 2014 Tribal Executive Board meeting a motion was made to resind the Clark home purchase with LBBP funds, noting there was no clear title on the home produced, and that was part of the original motion to buy the home. Defendant Ed Bauer opposed this motion. The motion passed. On 8/28/14 the Tribes purchased the home of Roberta Boyd-Beverage using LBBP funds.

On October 27, 2014 the Tribal council voted to declare no interest in a tract of land belonging to Mamie Dupree, who was looking to sell her property. According to committee minutes, Dupree's daughter Myra approached the land committee about the sale of the land. It is surface only and would include the house. (In August, 2014, the Tribes "declared interest" in the land and had it appraised. The appraisal was done and the land was valued to be worth $18,000.00). Councilman Stafne said he didn't agree with the appraisal, saying it was too high and BIA regulations wouldn't allow the Tribes to pay less. Regulations state the Tribes would have to buy the land at the appraised value or more. Councilman Christian as if this would fall under the Cobell Land Buy Back Program. It wouldn't, Stafne said. Stafne failed to identify the source of funding would be. Councilman Ed Bauer said there

is a way to buy it, through gift deed and then renegotiate. Stafne said if Dupree does hand in a fee patent request it still has to come before the council for approval. If Dupree does put in a fee patent request, the TEB has the first right of refusal then can go from there. The final vote was nine for and one (Marva Firemoon) opposed.

On or about September 18, 2014 the defendant Steve Daines acted with a deliberate indifference to the Plaintiffs' rights by ignoring defendant(s) Fort Peck Tribes misuse of the Cobell v. Salazar Land Buy Back funds and introduced legislation purportedly to empower tribes and improve the implementation of the Land Buy-Back Program. A program designed to enable hydrofracking and coal mining in "high risk" Indian Lands. Defendant Daines acted as a federal official and in a on-going common scheme with the forgoing defendants to enable hydro-fracking on the Fort Peck Indian Reservation and to misuse the Land Buy Back Program and denied the Plaintiff just compensation under the 5th Amendment of the U.S. Constitution.

9.) On August 22, 2014 Defendant(s) U.S. Dep't. of Interior and Administrative Law Judge R.S. Chester acting as federal administrators in their individual and/or official capacities and acting in a on-going common scheme with a deliberate indifference to the Plaintiff's Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and under the Sweet Grass Treaty, and under the Just Compensation Clause of the 5th Amendment and equal protection of the laws under the 14th Amendments of the U.S. Constitution by entering a Findings of Fact And Conclusions of Law with "no written transcript of the hearing" or legal instruments supporting "Decedent died owning interests in trust or restricted property located on the Fort Peck Reservation. The Bureau of Indian Affairs reports there was $0.00 in Decedent's Individual Indian Money (IIM) account as of the date of death.". The defendants failed to supply any legal instruments in regards to accreage, lease, lease payments, photographic documentation of trust or restricted property in question, percentum of trust or restricted property owed by decedent Victor Charles Fourstar, Sr., statement of decedents I.I.M. Account, and other instruments under 43 C.F.R. §30.114 and 25 U.S.C. §372 (1970), as amended, the Act of January 12, 1983 (Public Law 97-459), the Amended Act of October 30, 1984 (Public Law 98-608) and the Probate Regulations of the Department of the Interior, 43 C.F.R., parts 4 and 30, and other statutes under Indian Probate laws pursuant to Plaintiff's November 24, 2011 filed Probate Claim under Title 25 of the United States Code and in Part 30, Title 43, of the Code of Federal Regulations, or other applicable Indian Probate statutes In the matter of The Estate of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U008298, PROBATE: P000095667IP, Billings, MT. Office of Hearings And Appeals, Probate Hearings Division.

On November 10, 2014 Defendant(s) Julia Chavez and U.S. Dep't. of the Interior-Office of the Special Trustee For American Indians acting as federal administrators in their individual and/or official capacities and acting in a on-going common-scheme with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr's rights under the 1851 and 1868 Fort Laramie Treaties and under the Sweet Grass Treaty, and under the Just Compensation Clause of the 5th Amendment and equal protection of the laws under the 14th Amendments of the U.S. Constitution by, first failing to acknowledge and provide Fourstar's requests for his I.I.M. Account statement, and then finally replying "thank you for the correspondance you [recently] submitted requesting account statements for yourself and your father ... for your information we were unable to find a current open/active account in your name. However, we find a closed account which funds were paid to you at eighteen years of age which was prior to the dates you are requesting statements for." . On November 21, 2014 the Plaintiff Fourstar again requested his and his father Victor Charles Fourstar, Sr.'s I.I.M. Account Transactions from 1996-2009 (and lease data for Victor Charles Fourstar, Sr.) stating "Please ensure a thorough research of my records and advise". Defendant Chavez, etal.'s scheme conceals the Plaintiff and his fathers Assiniboine Docket funds that were placed in a interest bearing account on or about 2006 for 5-years that derive from their I.I.M. Accounts pursuant to Assiniboine council resolution. To date the Defendant(s) Chavez, etal. has not distributed said Assiniboine Docket funds with its accrued interests to Fourstar or his father and has not supplied the requested I.I.M. Account statement(s). Defendant Chavez, etal. scheme further conceals the Plaintiff and his fathers Assiniboine Docket percaps paid-out from I.I.M. Accounts preceeding the 2006 Assiniboine Council resolution to place their Assiniboine Docket funds into a interest bearing accounts for 5-years where prior to 2006 the Plaintiff and his father received annual Assiniboine tribal per caps deriving from their I.I.M. Accounts, and other Assiniboine and Sioux Tribal percaps from 1996-2009.

Defendant(s) D.O.I., Chester, Chavez and BIA-office office of the Special Trustee For American Indians caused the Plaintiff Fourstar settlement of his fathers trust and restricted property estate, settlement of his father's IIM Account and claims in the Cobell v. Salazar Indian Trust Settlement case under the Historical Accounting Class; Trust Administration Class, Trust Fund Administration Class-s, Land Administration Class, and Settlement Proceeds To The Estates or Heirs Of Deceased Class Members Of Both The Historical And Trust Classes.

10) On or about July 3, 2014 Defendant(s) Fort Peck Tribes and Dep't. of Interior did intentionally

and Knowingly enter into a illegal "Cooperative Agreement" using $79 million of the Cobell v. Salazar Indian Trust Settlement "Land Buy Back Program" and purportedly under the 2010 Indian Claims Resolution Act without reading the agreement as councilman Garrett Big Leggins said he wanted to be on the safe side and not approve it without being able to read the agreement and study it "I want to Know what the Tribes are getting into. I'm concerned who will be liable if it doesn't work out." The agreement was achieved under duress as stated by Tribes attorney Majel Russell, who was hired by the Fort Peck to provide legal assistance in implementing the program for the Fort Peck Tribes "the cooperative agreement is needed or the Tribes could be overstepped and the DOI will do it for you, which happened on the Rosebud Reservation in South Dakota. That tribe's council could not come to an agreement so the DOI took it out of their hands and it for the tribe", she said. Russell further alleged "Tribes have no entitlement to these funds, which are the result of the Cobell Settlement Agreement and the Indian Claims Resolution Act of 2010, they are letting us participate". The defendants denied Plaintiff just compensation and equal protection of laws, and piece-meals the Plaintiff's sovereignty under treaty and will result in the Plaintiff and other indians suffering environmental harms from hydrofracking and Keystone XL Pipeline Project, and interruption of Plaintiffs' sacred treaty lands and sites.

11.) On or about July 10, 2014 Defendants Jon Tester, John Walsh, Crow Tribal Leaders, Fort Belknap Tribal Leaders, Fort Peck Tribal Leaders, and the Bureau of Indian Affairs and Dep't. of Interior did intentionally and Knowingly conspire to enter into illegal "three new agreements between Montana Native American Tribes and the U.S. Interior Department to purchase individual interests of fractionated trust lands in order to consolidate ownership and [increase] economic opportunity in Indian Country." Tester, Chairman of the Senate Indian Affairs Committee, and Walsh have been pushing the department to quickly move forward with the agreements. Eroding the governments trust responsibility to the Plaintiff and other indians Walsh stated: "Today's agreements will secure the future of the Fort Peck, Fort Belknap, and Crow communities and ensure that tribal leaders [have true] authority over their own land". Defendant Walsh acknowledged the Cobell v. Salazar funds were being used to enable hydrofracking and Keystone XL Pipeline Projects stating: "I understand how vital the Land Buy-Back program is for [promoting] economic growth and long term sovereignty, and I remain a committed partner for future economic development for Montana tribal nations.". The defendants denied Plaintiff just compensation and equal protection of laws, and piece-meals the Plaintiff's soveignty under treaty and will result in the Plaintiff and other indians suffering environmental

harms from hydrofracking and Keystone XL Pipeline Project, and interruption of Plaintiffs' sacred treaty lands and sites.

12.) On or about July 31, 2014 Defendant(s) Grant Stafne, Steve Daines, Montana/Wyoming Tribal Leaders and Great Plains Tribal Leaders, Council of Large Land Base Tribes conspired to erode and piece-meal the Plaintiff's trust relationship with the government and sovereignty under the 1851 and 1868 Fort Laramie Treaty and Sweet Grass Treaty by illegally introduce and support defendant Steve Daines' H.R. 5020 to erode the Plaintiff Fourstar's trust relationship with the government piece-meal Fourstar's sovereignty under treaty by vaguely asserting Daines' would: (a) "correct a deficiency" and permit tribes to assume the Cobell v. Salazar Land Buy Back program's functions that they have the capacity to administer, (b) extend the land consolidation program for five years and (c) increase its transparency. Defendant Larry Roberts said during the hearing before a House Natural Resources Subcommittee on Indian and Alaska Native Affairs legislative that 12 cooperative agreements have been entered into with Montana Tribes and that they are "making progress". The defendants Daines, etal. denied Plaintiff just compensation and equal protection of laws, and piece-meals the Plaintiff's sovereignty under treaty and will result in the Plaintiff and other indians suffering environmental harms from hydrofracking and Keystone XL Pipeline Project, and interruption of Plaintiff's sacred treaty lands and sites.

13.) On or about October 16, 2014 Defendant(s) Fort Peck Tribal Leaders did intentionally conspire to award a $58,986 to complete to complete 171 mile corridor surveys by Beaver Creek who will/has provided a false and misleading culteral resource reporting of the Frazer to Porcupine Creek Main Transmission Pipeline, Frazer to Porcupine Creek branch lines, Wolf Point to Frazer branch lines, Poplar to Big Muddy River branch lines and the Main Transmission Pipeline along the RY Road between U.S. Hiway 2 and the northern boundary of the Fort Peck Indian Reservation and will result in the Plaintiff and other indians suffering environmental harms from hydrofracking and Keystone XL Pipeline Project, and interruption of Plaintiff's sacred treaty lands and sites.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Howard Bemer is employed as Fort Peck Agency, Bureau of Indians Affairs Superintendent at Poplar, Montana

B. Additional defendants: U.S. Dep't. of Interior Secretary Sally Jewel, BIA Deputy Secretary Larry Roberts, Robert Magnan - Fort Peck Tribes Fish & Game Director, Montana Department of Fish, Wildlife & Parks Commissioners, MT. State Senator Bridget Smith, World Wildlife Fund, National Wildlife Federation, Fort Peck Tribal Boardmembers, Ft. Peck Comm. College Vice-Pres. Larry Wetsit, InterTribal Bison Council, Bureau of Land Management, Jeff Hunt - U.S. Division of Energy & Mineral Development, Forest Smith - Tribal minerals Director, Jon Tester - MT. Senator, BIA Rocky Mountain Regional Office, Bureau of Reclamation, Senate of Indian Affairs

IV. Statement Of Claim #2:

On November 22, 2014 the Defendant(s) Howard Bemer, Sally Jewel, Larry Roberts, Robert Magnan, Montana Dep't. of Fish, Wildlife & Parks Commissioners, Montana Senator Bridget Smith, World Wildlife Fund, National Wildlife Federation, Fort Peck TEB, Bureau of Land Management, Larry Wetsit, InterTribal Bison Council acting as federal administators, agents and employees in their individual and/or official capacities did intentional and knowingly act in a ongoing common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s (Fourstar) rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution preparing a so-called "Programmatic Enviromental Assessment For Fort Peck Agricultural Leasing, Permitting, And Associated Improvements" that:

1.) Unnecessarily ambiguous provisions in the proposed regulations open the door to state and local ordinances, taxes, and state courts - the judges of which are oftentimes openly hostile to Tribal sovereignty. The regulations should make Tribal sovereignty paramount if self-determination is, in fact, a central element of modern federal Indian policy.

2.) The proposed rules include significantly greater power for the BIA to make decisions on behalf of Tribes and, especially, individual Indians, and to take actions impacting their lands without providing actual notice to the Tribal owners of those lands. In fact, several of the revisions to these rules work to relieve the landowners of their right to have a say in what happens to their lands if it is too inconvenient for the BIA to track the landowners down and get their input. New regulations should empower the landowners, not disenfranchise them.

3.) The proposed rules give increased authority for temporary holders of interests in Indian lands (e.g., a life tenant) to encumber Indian land with a right-of-way that may be permanent and impossible to undo (e.g., a road that could have destructive effects on the land and environment). So, a tenant who has an interest in a parcel of Indian land that the landowners may never have agreed to make decisions that permanently damage those lands, leaving the Plaintiff Fourstar and other Indian landowners to deal with the effects of those temporary interest holders. No other Trustee, aside from the defendants BIA, etal., would be permitted to treat her wards realty with such disregard.

4.) The proposed regulations contain an express presumption that the defendant BIA Deputy Secretary Larry Roberts, etal. must grant rights-of-way, and allow for mortgaging of right-of-way, all of which burden the title to Plaintiff's Indian lands, unless the BIA finds certain limited reasons to reject such efforts to encumber Plaintiff Fourstar's Indian lands. This is a presumption of the rights of the individual Indian and Tribal landowners. A trustee's presumption should error on the side of protecting their wards' interest. In this case, the Defendant BIA proposed rules that do exactly the opposite.

5.) The defendant BIA, etal.'s attempt to fast-track this significant regulatory overhaul may be the biggest problem here. Although there have been extentions of the agency's unilaterally imposed deadlines to submit comments on these proposed rule changes, the defendant BIA, etal. first published rules the summer of 2014 (defendant Howard Bemer did not publish them in the Plaintiff's only source of information "Fort Peck Journal" until November 20, 2014 i.e. two days befores Bemer's deadline for Plaintiff to submit "comments", thus causing Fourstar to submit his "comments" late to Bemer on December 4, 2014) and had minimal consultation with those will be impacted most profoundly: Tribes, the Plaintiff Fourstar and other individual Indian landowners. A couple of extensions of a deadline to submit comments is not enough. The Defendants BIA, etal. should have taken, and should still be required to take, its time with these rules by making a much better effort to consult with the Plaintiff and others who will be impacted by the proposed rules

6.) The defendant BIA, etal.'s so called programmatic environmental assess (PEA) purports to be in accordance with the National Environmental Policy Act (NEPA) of 1969 and the Council on Environmental Quality (CEQ) regulations (40 CFR 1500-1508), for agriculteral leasing, permitting, & "associated improvements" on the Fort Peck Indian Reservation, is merely a front to make an end run around the U.S. Congress's May 12, 2014 Investigative Report that highlights substan-

tial gaps in the Defendant Dep't. of Interior BLM that manages oil, gas, and coal development on federal and Indian lands. Congressional investigators said weak control by the defendant Interior Dep't. BLM resulted from policies based on outdated science and from incomplete monitoring data. The PEA is using the "expansion of the wild buffalo population" in the area of prime Bakken oil shale formation Indian lands to perpetuate the suspension of environmental laws under the 1976 National Emergencies Act (NEA), and where the NEA allows the government to buy and sell property without competitive bidding and waives medical privacy laws.

On or about October 30, 2014 Defendant(s) Fort Peck Tribes, Howard Bemer, Jeff Hunt, BIA and BLM acted in a on-going common scheme with Bryce Philips of Fort Worth Oil to approve of a resolution described as first step in a new oil development project that is without competitive bidding under threat of exposing the illegality of the resolution. With a vote of 12-0, the council approved of Surface use Terms agreement, which is the first step in the Stone Turtle Unit Agreement plan, then the next step is getting leases signed for the land. Jeff Hunt, of the federal government's Division of Energy and Mineral Development, along with BIA Superintendent Howard Bemer and Tribal Minerals Director Forrest Smith made a presentation to the Tribal Council about the Stone Turtle Unit Agreement plan with Forth Worth Operating Co., LLC. The agreement brings at least 10 new hydrofracking wells in "high risk" Indian lands near Fort Kipp, MT. on the Fort Peck Indian Reservation. It allows the company to illegally put up hydrofracking wells on 52,163 acres of "high risk" Indian lands. Bryce Phillips of Fort Worth Oil said the company wants to start drilling as soon as possible. Hunt said that unitization of the area benefits the Tribes, lease holders, and the company because all 52,000 acres have Fort Worth as the sole operator. It reduces competition and that will hold everything in place for more development. If things turn out highly productive it wouldn't be a land grabbing bidding war like in Fort Berthold, he said. Councilman Garrett Big Leggins asked why would reducing competition be good. Hunt said it could be good or a hassle, but if he tore about this agreement to look for flaws then there would be no drilling obligations upheld for any lease.

The so-called Stone Turtle Unit Agreement plan can not provide "reasonable assurances" that the Plaintiff and Fort Peck Indians will not be subjected to radioactive materials, polluted water aquifers and sources, and mineral thefts from 2011 - Present. Due to mineral thefts taking place in Poplar, MT. from across the Missouri River (the reservation border) through unmonitored hydrofracking from 2011 - fall 2014, the Plaintiff's aunt Myrna First (who was a resident of Poplar, MT. in Brine Plummage areas) passed away suddenly due to cancer on

June 17, 2014, a untimely death caused by the negligence of defendant(s) BLM, etal.. On October 21, 2014 the Plaintiff filed 'Objections To Proposed Code of Ethics' with Fort Peck Tribal Secretary/Accountant Jackie Weeks alleging Proposed Code of Ethics, Title 33, Sec.104(A)(1), (2), & (3), and Sec. 108 as violation of treaty rights and in violation of the Administrative Procedure Act because the Tribal Boards actions (and any sanctions) are cloaked in secrecacy without the ability to seek redress in any court of law. Thus the defendants Tribal Board members would fare no scrutiny from a court of law for entering into illegal oil drilling agreements.

The defendants caused the plaintiff loss of land rights, denial of just compensation, and denial of 'reasonable assurances' he will not be subjected, has not been subjected, to environmental harms, and loss of family member to untimely death without redress for defendant TEB's harms.

On or march 20, 2014 Defendant(s) Jon Tester, Tom Christian, Sally Jewel, Larry Roberts, Rick Kirn conspired to circumvent the may 12, 2014 Congressional Investigative Report that reported the known environmental harms in hydrofracking on 'high risk' Indian lands due to the defendant BLM lack of oversight, outdated guidelences in oil well spacing, mineral theft, fracking back-wash disposal, oil and coal interferences With a deliberate indifference to these known harms and shortcomings by the BLM, defendant Tom Christian said "Afford us an opportunity at economic development so we can take care of our own and not depend on anyone. Now, we have to compromise our services and cut 10-percent. And we cannot access oil like on reservations in North Dakota... The red tape is what's taking so long. We know we have oil on the reservation but we can't get to it," he said. "maybe the BIA has to [update its regulations] to keep up with [modern times]," he added. "We [don't need] the oversight like we did 100 years ago," defendant Rick Kirn said. Defendant Sally Jewell acted with a deliberate indifference and in a on-going scheme to circumvent her Trust responsibility to protect the Plaintiff Fourstar from environment harms from hydrofracking and referenced the so-called enlightened ones: "With my [northstar], I am guided to listen to tribes and create [environments] where you have plenty of opportunities,"... "With the [red tape], we can work on that and can do something about that," Jewell responded. "I'm very committed to making progress". Defendant Larry Robert demonstrated indifference and said he and Jewell are in their positions for the next three years, or until the end of President Obama's second term in office. "It's a blip but we want to do as much as possible and learn [where] those bumps in the road are," Roberts said. Defendant Jon Tester demonstrated further indifference and acknowledged the Tribal leaders willingness to sacrifice the Plaintiff's

health in favor of Big Oil "one of the reasons we're here is because you guys provide incredible leadership for your people," Tester said.

To overcome the red tape, Defendant Sally Jewell is administering the Fort Peck Tribes Assiniboine & Sioux Rural Water Supply System/Dry Prairie water projects. In 2014, Congress gave $9.2 million for the project, and allowed the Defendant Tribes to construct a main pipeline and branches of it throughout the reservation. The water plant draws its water from the Missouri River that flows through the Fort Peck Indian Reservation. Defendant Jewell, who started her career as a petroleum engineer and former CEO of REI, Inc., stated: "We hope we can continue to do the right thing for the tribes and surrounding areas. It's a way for the government to bring clean water to the tribes and the surrounding area" she said. Defendant Jon Tester acting with a deliberate indifference to the Plaintiff's health stated: "You've done a great job with your dollars here and I commend you for that,"... "It helps us get more. At some point in time, this project [will be done]." Tester said after the tour that the key word in the project is "collaboration". The defendant Tribes partnered with surrounding towns and counties off the reservation to get the project moving. When the federal government declares an emergency due to drought, cold weather, etc. pursuant to the National Emergies Act of 1976 under the guise of assisting in the maintance of "the wild buffalo herd", the defendants Jewell, etal. will be legally able to suspend environment laws and hydrofrack on the areas where the "wild buffalo herd" is housed. However, waterways in those areas flow into the Missouri and will jeopardize the defendants water treatment facility between Wolf Point and Poplar, MT. i.e. the Assiniboine & Sioux Rural Water Supply System/Dry Prairie water projects. The City of Wolf Point is concerned with the capability of the water system being able to deliver safe drinking water to city residents, despite this concern the Wolf Point Tribal Housing water system is already hooked up to it. Wolf Point is the Plaintiff Fourstar's home. For FY 2015, the Fort Peck Tribes received an additional $9.3 million for further construction of the water system by the federal government. ASRWSS Director Tom Escarcega said the funds give the green light for the Frazer to Nashua pipeline project and other needed lines on the reservation. "The rest of the funds will go toward building the branch lines". A water system the City of Wolf Point fear would be at the mercy of and subject to government shut-downs. A water system that would be further subject to the potential water pollutions of a oil spill from the intended construction of the Keystone XL Oil Pipeline and causing the Plaintiff to be subjected to potential environmental harms and polluted waters, a situation the defendant(s) Jewell, etal. intend to conceal with heavy concentrations of chlorine and other chemicals.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Mitch McConnell is employed as U.S. Senate majority Leader (R-Kentucky) at Washington, D.C.

B. Additional defendants: U.S. Senator James M. Inhofe (R-OKL), U.S. Senators Jon Tester and John Walsh (Democrats-MT.) and All 45 Unknown Republican U.S. Senators and 13 Democratic Unknown U.S. Senators, MT. Governor Steve Bullock, Howard Bemer-Ft. Peck BIA Superintendent, Larry Roberts-BIA Deputy Secretary, Sally Jewell-U.S. Secretary of Interior, Bureau of Land Management, BIA Rocky Mountain Regional Office, U.S. Bureau of Reclamation, TransCanada-Keystone XL, David Goldwyn-State Dep't. Bureau of Energy Resources, Barack Obama-U.S. President, Fort Peck Tribal Board members, Enviromental Protection Agency, Bill Cassidy (R-La.)

IV. Statement of Claim #3:

On November 13, 2014 Defendant(s) Barack Obama, David Goldwyn, EPA, acting as U.S. President, and federal agencies and federal employees did intentionally and knowingly act in a on-going common-scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, and rights under the Clean Water Act, and other Indian Freedom of Religion Act(s), and the 1st, 5th, and 14th Amendments of United States Constitution by enacting two "ambitious" Environmental Protection Agency regulations that are the heart of Defendant Obama's climate change agenda and without consultation with the Plaintiff Fourstar who will be most profoundly effected. Defendant David Goldwyn/State Department is now awaiting a decision by a Nebraska court on the route of the pipeline before any decision is made.

If defendant Mitch McConnell and defendant James M. Inhofe send a TransCanada Keystone XL bill to defendant Obama before the Nebraska verdict, acting in a common scheme with the defendant(s) McConnell and Inhofe, Obama is likely to veto it. But people familiar with Obama's policies, patterns or practices say that when it comes to climate change policy, Obama sees the E.P.A. regulation as the centerpiece of his environmental agenda and the Keystone pipeline as a sideline issue. Asked about the Keystone XL pipeline project and the Nebraska court case, Obama acted with a deliberate indifference to the Plaintiff's rights on or about November 6, 2014 stating "I'm going to let that process play out, and I'm just going to gather up the facts."

Republicans were likely to add a Keystone-approval provision to key spending bills. Mr. Obama appeared willing to veto such measures to protect the climate change rules, but he may not be willing

to do so for the pipeline, a single piece of infrastructure. "I think there is probably a deal to be had on Keystone," said defendant Goldwyn, who led the State Dept.'s Bureau of Energy Resources in Obama's first term. "If Republicans attach Keystone to a budget bill, I don't think he's so principally opposed to it that he would veto it."

Defendants McConnell and other Republicans are, in the meantime, stepping up their demands that Obama approve construction of the Keystone XL Pipeline to carry petroleum from Canada oil sands to refineries on the Gulf Coast.

Defendants McConnell, etal. say they will use their new powers to delay, defund and otherwise undermine the new EPA regulations proposed by Obama. Defendant James M. Inhofe acting in a on-going common scheme and with a deliberate indifference to Plaintiff's rights, who is the presumed new chairman of the Senate Environment and Public Works Committee, is expected to open investigations into the E.P.A., call for cuts in its funding and delay the regulations as long as possible.

On or about November 6, 2014 Defendant McConnell signaled that he, too, wanted to cut the E.P.A.'s budget to keep it from enforcing environmental regulations and are expected to include provision's that would repeal the E.P.A. regulations in crucial spending bills.

The Keystone XL Pipeline (operated by defendants TransCanada) would come down from Canada and cross the Plaintiff's Indian lands pursuant to his 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties. The government has offered $1.5 billion dollars to settle the theft of the Black Hills, a settlement offer rejected by the Plaintiff and his Lakota, Nakota and Dakota Tribes. Even the latter 1868 Fort Laramie Treaty original boundries, that have since been altered illegally, cover the area where the intented Keystone XL Pipe will cross, and cross the Missouri River near Nashua, MT. endangering the Plaintiff's water supply should the pipeline break, violate Sacred Treaty Land and to violate these lands by digging ditches for the pipelines is blasphemes to the Plaintiff's Native American beliefs and sacred Native American sites and intrude upon the Plaintiff individual Trust and Restricted property estate in question In the Matter of the Estate Of: Victor Charles Fourstar, Sr., Deceased Fort Peck Indian, Identification No.: 206U008298, PROBATE: P000095667IP (to include the original Estate boundries), U.S. Dept. of the Interior, Office of Hearings And Appeals, Probate Hearings Division, Billings, MT. (R.S. Chester-Administrative Law Judge) without just compensation and equal protection of the law.

The Tribes and Plaintiff's water supply for the Assiniboine & Sioux Rural Water Supply System/Dry Prairie water projects pipeline and water treatment facility comes from the Missouri River.

Both defendant(s)/ Montana U.S. senators Jon Tester and John Walsh acted with a deliberate

indifference to the Plaintiff's rights by voting on November 18, 2014 to move forward with legislation approving the Keystone XL pipeline. But the measure failed by one vote in the Senate chambers. All 45 Republican senators voted for the legislation and 13 Democrats jumped to their side, including defendants Tester and Walsh. Tester said "despite today's vote - Congress will find ways to work together to strengthen our nation". Tester is also the chairman of the Senate's Indian Affairs committee. Defendant Walsh acting with a deliberate indifference to Plaintiff's rights and in a common-scheme with Tester stating: "I will keep pushing for approval of the Keystone XL Pipeline because it will create jobs and reduce our reliance on overseas oil". On November 6, 2014 the House passed similar legislation. The House vote was 252-161 favoring the bill. The bill was sponsored by defendant Bill Cassidy. On December 6, 2014 Bill Cassidy (R-La.) defeated democrat Mary Landrieu for a senate seat. Two hundred twenty-one Republicans supported Cassidy's bill which made the Republican support unanimous while 31 Democrats joined the Republicans. One hundred sixty-one Democrats rejected the House bill.

On or about November 23, 2014 defendant Steve Bullock (Montana Governor) acted with a deliberate indifference and in a on-going common scheme with with defendant Tester, etal. to violate the Plaintiff's rights by submitting a budget proposal for the 2017 biennium, that favors infrastructure and workforce for the construction of the Keystone XL Pipeline and hydrofracking on the Fort Peck Indian reservation stating: "We can't have statewide economic prosperity without economic prosperity for the tribal nations in montana. That's why I am committed to funding programs that help create jobs". Purportedly the budget reinforces the 'workforce [pipeline]', and create jobs in Indian Country, making $1.6 million in funding for 'regarded' Indian Country Economic Development (ICED) Program permanent by including the funding in the base budget. The ICED program supports job growth, an increase in workforce development, and other crafty designations. http://budget.mt.gov.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Jon Tester (D-Mont.) is employed as United States Senate Chairman of Indian Affairs Committee at Washington, D.C.

B. Additional defendants: U.S. Senator(s) Tammy Baldwin (D-WI), John Barrasso (R-WY), Mark Begich (D-AK), Maria Cantwell (D-WA), Thad Cochran (R-MS), Mike Crapo (R-ID), Dianne Feinstein (D-CA), Al Franken (D-MN), Martin Heinrick (D-NM), Heidi Heitkamp (D-ND), Dean Heller (R-NV), Mazie Hirono (D-HI), Jim Inhofe (R-OK), Tim Johnson (D-SD), Tim Kaine (D-VA), Ed Markey (D-MA), Jeff Merkley (D-OR), Jerry Moran (R-KS), Patty Murray (D-WA), Harry Reid (D-NV), Debbie Stabenow (D-MI), Brian Schatz (D-HI), John Thune (R-SD), Tom Udall (D-NM), John Walsh (D-MT), Ron Wyden (D-OR), Melissa Schlichting - MT-U.S. Dep't of Justice Asst. Attorney General, Mike Cotter - MT. U.S. Attorney, Fort Peck Tribes Executive Board members (listed in caption), Brian Kuntz - Fort Peck Tribal Drug Officer, Eugene Stump - Fort Peck Drug Officer, Patty McGeshick - Tribal Family Violence Resource Director, Glen Meier - Valley Co. Sheriff, Under Sheriff Vernone Buerkle, chief Deputy Mathew Remmich, and deputies Alex Estavez, Lucas Strommen, Wayne Shipp, and Christopher Richter; For Montana Hiway Patrol Sgt. Jeff Kent and Troopers Charles Tuggle, Mitchell Willet, David Moon, Derek Werner, Steven Nord, Lynwood Bateman, Seth Adams, Zack Miller, Colleen Timmins, and Derek Schuler; For Roosevelt County at Wolf Point, MT.: Police Sheriff Jason Frederick, Under Sheriff John Summers, Chief Deputy Cory Reum, and deputies Tim Lingle, Clay McGeshick, Dan Cantrell, William Black Dog, Curtis Holum, Joe Moore, Eugene Culbertson, Eric Nelson, Pat O'Conner and Steve Barr. For City of Wolf Point, MT. Police Officers: Police Chief Jeff Harada, Lt. Brian Erwin, and officers Ryan Michaelson, Alisha Corpron, and Mehsin Wehbe. For the City of Poplar, MT. Police: Lowell Boyd and reserve officer Ray Lamb., Sharon Dschaak - Safety coordinator for North Eastern Montana Health Services in Wolf Point, MT., Unknown Roosevelt County Disaster and Emergency Services Coordinator in Wolf Point, MT., Fort Peck Tribal Police Captain James Summers at Poplar, MT., Fort Peck Dep't. of Law & Justice, Fort Peck Housing Authority, Mike Mathews - Director of Fort Peck Adult Detention Center, Fort Peck Adult Detention Center Correctional Officers at Poplar, MT.: Xanthia Sioux Goodtrack, Mathew Tracey Bell, Tyler Don Reum and Josie Rae Stone. Fort Peck Juvenile Detention Center Correctional Officers Doris Headdress, Isaac Lilley, Derrick Long Hair, Jerrid Mudgett, Bonnie Metz, Ennis Russell and Bill Young, Bureau of Indian Affairs at Poplar, MT., Montana Board of Crime, Federal Bureau of Investigations at Glasgow, MT., RJ Young - Juvenile Correction Officer, Montana State Bar, Eldena Bear Don't Walk.

IV. Statement of Claim #4:

On or about November 26, 2014 the defendant(s)/U.S. Senator(s) Jon Tester, et al. acting as federal officials did intentionally and knowingly act with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty, rights under the 1st, 4th, 5th, 6th, 8th, and 14th Amendments of the U.S. Constitution, rights under the Indian Civil Rights Act by unanimously pass a U.S. Senate resolution introduced by the Chairman of the Senate Indian Affairs Committee recognizing government-to-government relationship between tribes and the United States to include:

1.) On or about September 4, 2014 Defendant(s) Jon Tester, Mike Cotter, Glasgow, MT. FBI Office, Asst. Attorney General Melissa Schlichting of the MT. Dep't. of Justice, Fort Peck Tribal Executive Boardmembers, BIA-Fort Peck Agency were deliberately indifferent to the Plaintiff Fourstar's rights by operating the Fort Peck-State 2001 and 2003 Cross Deputization Agreement(s) with liability insurance for injuries to the Plaintiff Fourstar (and others likely situated) "one of the largest things is federal tort claims coverage. This is not available for the enforcement of tribal law or state law in federal jurisdiction, meaning tribal and state officers working on the reservation cannot file a tort claim if [they] are wronged or harmed while working because the reservation is federal land.", Fort Peck Journal, pg. 7

The defendant(s) Tester, et al. are deliberately indifferent to the Plaintiff Fourstar and other similarly situated indians rights by operating the 2001 and 2003 Tribal-State Cross Deputization Agreement without criminal jurisdiction for defendant(s) for Glasgow, MT.-Valley County Sheriff Glen Meier, Undersheriff Vernone Buerkle, Chief Deputy Mathew Remmich, and deputies Alex Estavez, Lucas Strommen, Wayne Shipp, and Christopher Richter; For Montana Hiway Patrol Sgt. Jeff Kent and Troopers Charles Tuggle, Mitchell Willet, David Moon, Derek Werner, Steven Nard, Lynwood Bateman, Seth Adams, Zack Miller, Colleen Timmins, and Derek Schuler; For Roosevelt Co. Officers: Sheriff Jason Frederick, Undersheriff John Summers, Chief Deputy Cory Reum, and deputies Tim Lingle, Clay McGeshick, Orin Cantrell, William Black Dog, Curtis Holum, Joe Moore, Eugene Culbertson, Eric Nelson, Pat O'Connor and Steve Barr. For City of Wolf Point, MT. Police Officers: Police Chief Jeff Harada, Lt. Brian Erwin, and officers Ryan Michaelson, Alisha Corpran, and Mehsin Wehbe. For The City of Poplar, MT. Police: Lowell Boyd and reserve officer Ray Lamb

2.) On or about September 4, 2014 Defendant(s) Tester, et al. acted with a deliberate indiffence to the Plaintiff's and other similarly situated by perpetrating the 2001 and 2003 Fort Peck Tribal-State Cross Deputization Agreement on the Fort Peck Indian Reservation in Montana for the illegal purpose of implementing the Tribal Law & Order Act without a right to state or Federal habeas corpus.

3.) On or about 2, 2014 Defendant(s) Jon Tester, Glasgow, MT. F.B.I., Fort Peck Tribes Family Violence Resource Center Patty McGeshick acted with a deliberate indifference to the Plaintiff Fourstar's rights perpetrating the illegal 2001 and 2003 Fort Peck Tribal-State Cross Deputization for the purposes of implementing the illegal Violence Against Woman Act on the Fort Indian reservation through a $689,823.00 federal grant awarded by defendant Jon Tester (D-MT). Defendant Patty McGeshick said she will be working "closely with local law enforcement" and the FBI. The financial support comes from the Violence Against Woman Act Bakken Regional Initiative in a on-going common scheme to provide illegal infrastructure for hydrolic frackuring for oil and the Keystone XL Pipeline on the Fort Peck Indian Reservation.

4.) On or about October 30, 2014 Defendant(s) Mike Mathews, Xanthia Sioux Goodtrack, Mathew Tracey Bell, Tyler Don Ruem and Josie Raestone opened up and put into operation the Fort Peck Adult Detention Center with American Recovery Act stimulus funding released by the federal government. The federal funding and new Adult Detention Center operation is a on-going common scheme by senator/defendant Jon Tester to provide infrastruture for perpetration of the illegal 2001 and 2003 Tribal-State Cross Deputization Agreement for the purposes of perpetrating the illegal Tribal Law Border Act and the illegal Violence Against Woman Act without affording the Plaintiff and others similarily situated access to the federal and state habeas corpus. Of the amount certain supplied with federal American Recovery & Reinvestment Act funds, $1.8 million will go to the adult center for operations. Three years ago the Tribes illegally entered into an Indian Self-Determination 638 contract with the defendant Bureau of Indian Affairs to build the 42,000 square-foot facility.

5.) On or about October, 2006 the defendant(s). Montana State Bar and Montana U.S. Attorney Mike Cotter did intentionally and knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff Fourstar and other indians' rights under treaty and the 1st, 4th, 5th, 6th, 8th, and 14th Amendments of the U.S. Constitution by listing Eldena Nicole Bear Don't Walk as being a member of the Montana State Bar Association who just has a Justice Degree.

On or about November 20, 2014 the defendant(s) Fort Peck Tribal leaders and U.S. Attorney Mike Cotter did intentionally and knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff and other indians rights by hiring Eldena Nicole Bear Don't Walk as the new Lawyer Judge for the Fort Peck Tribal Court inorder to perpetrate the illegal Tribal Law & Order Act and the illegal Violence Against Woman Act knowing that Bear Don't Walk does not hold a proper federal or state law degree stating councilman Grant Stafne was "very impressed with

Bear Don't Walk's crediential's and moved to approve of hiring her as the new lawyer judge, with the salary to be negotiated. Defendant Bear Don't Walk acted with a deliberate indifference to the Plaintiff's rights and painted over her lack of qualifictions and the illegal executive order(s) Tribal Law & Order Act and Violence Against Women Act stating "Sovereignty in the big picture as the council is a big job, But [TEB] also have a job to do I (sic) the way tribes want to do it," and caused the Plaintiff Fourstar and other indians to be subjected to "enhanced" sentences without redress in the federal or state habeas corpus schemes, and in violation of Plaintiffs treaty rights, and Indian Civil Rights Act.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Edward Bach is employed as Trustee of Board of Trustees Wolf Point Public Schools at Wolf Point, montana

B. Additional defendants: Other Board Of Trustees: Tarann Boysun-Vice-chairperson, martin DeWitt-Chairperson, Tracey Juve-miranda-Trustee, Brent Nygard-Trustee, Janice Wemmer-Kegley; school District staff at Wolf Point, MT.: Joseph Paine-Superintendent, Cheri Nygard, Naomi Erickson-Federal Programs Coordinator, Connie Neubauer-Claims/Students Accounts Clerk, Jennifer Zimmerman-Payroll Clerk, Richard Desch-Curriculum Coordinator/Data Specialist, Greg moniz-Technology Administrator, Scott Edmundson-IT System Support, Kristi Lepper-Speech/Language Pathologist, Patricia Toavs and Kim Hanks-Special Education Coordinator; Wolf Point, MT. Southside Elementary school Administration: Susan C. Brown-Principal, Kindergarden Certified staff: Edith Allen-Kindergarden Teach, Rebecca Fritz-Kindergarden Teacher, Jennifer medicine Cloud-Kindergarden Teacher, Kathy Bauch-Kindergarden Teacher; First Grade Certified staff: Rainy Azure-First Grade Teacher, Cathy madison-First Grade Teacher, Paige Vinton-First Grade Teacher, Kelli Vine-First Grade Teacher; Second Grade Certified staff: Kim Beckers-second Grade Teachers, Daisha Douglas-Second Grade Teacher, Dianne Hoverslund-second Grade Teacher, Jocelyn Peters-Second Grade Teacher; Third Grade Certified staff: Connie Bergen-Third Grade Teacher, maureen Piersak-Third Grade Teacher, Dinne Taylor-Third Grade Teacher; Southside school Other Certified staff: Vicki Bisbee - Counselor, Vicky Boysun-Kindergarden Special Education, Ashley Fleming-SEA Facilitator, Jane Janssen-Huber-Librarian, Judy Leddige-Alternative Learning, Joelle Page-Special Education for 2nd/3rd Grade, Stephanie Paine-Health Enhancement, Catherine Peterson-Special Education Teacher 1st/2nd Grade, Connie Zimmerman-Music; Southside Support Personnel: AJ Allen, Joel Bergen, Rosalie Juve, Rosie Kurokawa, Penny Olson, Leanne Smith, Taunja Wasser, Angela Bates, Kathy Denny, Linda martinez, Corrine Smith, Sue Toavs, Julie Wehbe; Wolf Point, MT. Northside Elementary School Administration: Hannah Nieskens-NS Principal, Fourth Grade Certified Staff: Kathryn Adkins-Fourth Grade Teacher, Amanda Campbell-Fourth Grade Teacher, Melissa DeWitt-Fourth Grade Teacher; Fifth Grade certified Staff: Holly Girard-Fifth Grade Teacher, William macDonald-Fifth Grade Teacher, Lee Vandall-Fifth Grade Teacher; sixth Grade Certified staff: Jana Elliott-Sixth Grade Teacher, Emily Hamilton-sixth Grade Teacher, Rona Stevens-Sixth Grade Teacher; Northside other Certified Staff: Jim marmon-Counselor, June Petrik-NS Librarian, Thomas Olsen-Special Education Teacher, Barbara-Olson-

Spec. Ed. Teacher, John Sweet - Health Enhancement, Sharri Vandall - SEA Facilitator; North-side Support Personnel: Clarice Charette, Ann Landsrud, Aubreigh Solberg, Deb Greenwood, Tiffany Szymanski, Fern Follett, Sonia Martell-Hawk, Cheryl Taylor, Pat Vine; Wolf Point, MT. Junior High/High School Administration: Social Studies: Melanie Blount-Cole - JH Social Studies, Michael MacDonald - HS Government, Karli Madison - HS Social Studies, Jeff McMorris - JH Social Studies; ENGLISH: Robin Hayes-Hernandez - JH English, Michael MacDonald - HS English, Patrice McDonald - HS English, Jessica Sweet - HS English; MATH: Agboola Aliu - HS Math, Megan Helmer & Connie Lambert - JH Math, Bryan Stormer - HS Math; SCIENCE: David Booke - HS Science, Linda Cacopardo - JH Science, Karla McGill - JH Science, Teresa Romo - HS Science; FINE ARTS: Lynne Monson - JH/HS Band/JH/HS Chorus, Vivian Schultz - HS Art; ELECTIVES: Erin Fosland - HS Business/Yr. Book, Martin J. Toavs, Jr. - Vocational Education, R.C. Page - Industrial Arts; JUNIOR HIGH/HIGH SCHOOL OTHER CERTIFIED STAFF: Melissa Cromwell - Health Enhancement, Mike Erickson - Athletic Director/Transportation/Strength/Cardio, Dannielle Solberg - HS Special Education, Pam Murlawski - JH/HS Librarian, Eric Peterson - Health Enhancement/Strength, Joyce Ragland - OLC Teach.; Keri Smsaver - HS Counselor, Maxine Strade - HS Special Education, Patricia Toavs - JH Special Education, Myrle Zilkoski - JH Counselor; JH/HS SUPPORT PERSONNEL: James MacDonald, Shirley Vandall, Peggy Tolan, Carol Wallette; SECRETARIAL STAFF: Arden DeWitt - JH/HS Attendance Secretary, Michelle Eanes - Southside Secretary, Christie Ferdina - JH/HS Secretary; Rick Kirn - Chair Fort Peck Law & Justice Committee at Poplar, MT.; Charlene Cheek - Poplar, MT. and Brockton Student Advocate, Ramey Escarcega - Growing Thunder - Tribal Language & Cultural Program Director, Viola Wood - Director Headstart Program, Jon Tester - MT. U.S. Senator, Kim Harding - Poplar, MT. - School Superintendent, Francis LaBounty, Gilbert and Georgianne Fish - Great Falls, MT. Public School's Indian Education Program, Denise Juneau - Montana Education Superintendent, Neil Taylor - Education Department Director, Jon Tester - MT. U.S. Senator

IV. **Statement of Claim #4:**

1.) On August 20, 2014 Defendant(s) Denise Juneau, and Edward Bach, etal. (hereafter refered to as Wolf Point School District #45-45A) acting under federal law in their individual and/or official capacities and acting in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr. and his 8th grade children Trey Marcus Paul Fourstar and Jayde Peyton Fourstar's rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties and rights

under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'Malley funds and about $745,000 in Title VII funds, by instituting "Common Core Standards" and curriculum without fairly and fully consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation (Frazer, MT.; Wolf Point, MT., Poplar, MT.; Brockton, MT.; And Culbertson, MT.) and caused the Plaintiff's children to be taught by so-called "Certified Staff" pursuant to unannounced emergency or other provisional status through which state qualifications or licensing criteria have been waived, and caused the Plaintiff's children to be subjected to a lower curriculum that doesn't adequately prepare them for college and rather prepares them for mere trades such as welding, bricklayer, painter, building and trades, culinary arts, forced attendance and longer school hours; The Wolf Point, MT. Elementary School:

Kindergarden – 1st Grade day begins at 8:05 a.m. and ends at 3:50 p.m. Monday-Thursday

2nd-3rd Grade day begins 8:05 a.m.-3:55 p.m. Monday-Thursday

The Northside School 4th-6th Grade begins at 8:00 a.m. and ends at 4:09 p.m. Monday-Thursday

The Junior High/High School day begins at 8:00 a.m. and ends at 4:09 p.m. Mon-Thurs.

A curriculum and standard enabled by the 2001 No Child Left Behind Act

And if the Plaintiff's children are absent for more than 10-days for any reason they are improperly refered to "Truancy Court" and forced to attend school from a new Juvenile Detention Center that was built with $8 million federal American Recovery & Reinvestment Act funds.

2.) On or about August 7, 2014 Defendants Deise Juneau, and Poplar, MT. School District acting under federal law in their individual and/or official capacities and acting in a on-going common scheme and with a deliberate indifference to the 711 Native American students rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties and rights under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'Malley funds and about $745,000 in Title VII funds, by instituting "Common Core Standards" and curriculum without fairly and fully consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation and recruiting and importing a new Poplar, MT. school superintendent Kim Harding who's goal was to set up a community improvement project, where students will go out and build things good for the town with a welding or carpentry curriculum targeting those Native American students and causing those students to be inadequately prepared for college.

3.) On or about August 14, 2014 Defendants Deise Juneau, and Brockton, MT. School District act-

ing under federal law in their individual and/or official capacities and acting in a on-going common scheme and with a deliberate indifference to the 119 Native American students rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties and rights under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'malley funds and about $745,000 in Title VII funds, by instituting "Common core Standards" and curriculum without fairly and fully consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation and recruiting and importing a new Brockton, MT. School Superintendent Francis LaBounty who's goal it was to change the way indian students think, behave, and curriculum that fails to adequately prepare native american students for college, but rather merely prepares the students for building trades such as welding, carpentery, culinary arts. LaBounty advises that purportedly and according to federal law, if schools cannot meet a "Annual Yearly Progress" report in a certain amount of time, the state (who lack jurisdiction on the Fort Peck Indian Reservation) can come in and close them, the school would re-open completely under state control, with no community input. A school board would be powerless to make decisions, teachers would all be fired and replaced with hand-picked educators by the state who would perpetuate the "Common Core" standards and curriculum.

4.) On or about October 23, 2014 Defendant(s) Denise Juneau and the Poplar, MT. School District and Fort Peck Tribal Education Conference acting under federal law in their individual and/or official capacities and acting in a on-going common scheme and with a deliberate indifference to the 711 Native American rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties and rights under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'malley funds and about $745,000 in Title VII funds, by instituting "Common Core Standards" and curriculum without fairly and fully consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation and recruiting and importing Frank Gilbert and Georgianne Fish. Frank Gilbert, a math teacher at 800-student at East Middle School in Great Falls, MT. racially discriminates against Native American students and subjects them to his reduced math curriculum "Hungry for math". His resource room, designed to help students falling behind in math, are 100-percent Indian, East has a large population of Indian students from various tribes. Gilberts objective is to force attendance and change the attitudes and behaviors of native american students, a dictate imposed on the Poplar, MT. Native american students.

5.) On or about August 22, 2014 Defendants Denise Juneau, and Edward Bach, etal. and the Wolf Point School District #45-45A, acting under federal law in their individual and/or official capacities and acting in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr. and his 8th grade children Trey marcus Paul Fourstar and Jayde Peyton Fourstar's rights under the

1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaties and rights under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'malley funds and about $745,000 in Title VII funds; by instituting "Common Core Standards" and curriculum without fairly and fully consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation. Carrie Mannie, Indian Education Coordinator for Wolf Point Schools, said they used Johnson O'Malley (JOM) funding to cover the prejudicial activity fees for Indian students in the last year, but it might not be possible this school year. "It's getting crazy," said manning of the fees in Wolf Point, the only school who requires the fees. The activity fee, needed by students to participate in a school activity, went up from $30 per student last year to $50 this year, there's a $10 fee to participate in art, a $15 fee to take wood shop, and $25 each quarter for junior high and high school students to take up school band. Due to $1000,000 in carryover funds from 2008, the Wolf Point Indian Education Committee has been operating on those funds and were able to help with the fees, or a $50 voucher for shoes, said manning; and now the JOM funding from years past is down to $13,000. "We're getting concerned and worried about helping our kids," she told the committee. At the last IEC meeting, they held off on approving any activity fees. "This is discouraging to Native students who can't afford the activity fees". The defendants caused Trey and Jayde Fourstar to be deprived of leadership skills that spring from school activities. The defendant(s) Wolf Point School District further instituted a curriculum that omits history icons from the history books and deprives the Plaintiff's children of an adequate education and a sense of hope for the future.

6.) On or about November 20, 2014 Defendant(s) Jon Tester, School Districts of Poplar, Culbertson, and Brockton, MT. acting under federal law and in a on-going common scheme and with a deliberate indifference to the 711 Native American students in Poplar, 89 Native American students in Culbertson, and the 119 Native American students in Brockton rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and rights under federal Impact Aid (more than $8 million dollars); $125,000 in Johnson O'malley funds and about $745,000 in Title VII funds, by instituting "Common Core Standards" and curriculum without fully and fairly consulting the Indian Education Parent Committee on the Fort Peck Indian Reservation by securing computers through U.S. Senate's Computer's for Schools Program that will be used for "Common Core Standards" and curriculum, and by using Pell Grants for "Certificate and Trade Programs", decreasing student loan rates, and publicizing education tax benefits and through federal Student Loan Refinancing Act.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Barack Obama is employed as president of the United states at Washington, D.C.

B. Additional Defendants: Peg Norgaard-CEO for Wolf Point, MT. Northeast Montana Health Services (NEMHS), Cleo Cagel-CFO for NEMHS, Elaine Long-Director of Nursing for NEMHS Trinity campus, Julie Bemer-Fort Peck Indian Health Service Unit Director at Poplar, MT., John Gilbert-Chief Medical Officer for NEMHS at Glasgow, MT., Kayt Whitebird-Orange-Advisory Board for Fort Peck Wellness and DUI Court at Poplar, MT., Tara Spradley-NEMHS Quality Assurance/Performance Improvement, Carla Lovan and Barbara Toves-National Health Care Reform Benefits Coordinators for Area Affordable Care Act Coordinator in Wolf Point, MT., Rick Kirn-Fort Peck Tribal Executive Board at Poplar, MT., Charles Headdress-Chairman of Health & Human Services Committee in Poplar, MT., Marva Firemoon-Fort Peck Tribal Executive Boardmember (TEB), New staff pursuant to Affordable Care Act at the Fort Peck Service Unit: Dale Dysinger-Pharmacist, Linda Brown-Public Health Nurse, Jasmine Azure-Wolf Point Appointment DESK, Barbara Smith-Medical Technologist, Teila Kreusel-Optometry Tech., Rita Hopkins, RN-Telehealth Nurse Coordinator, William Bemer-Contract Health services, Lisa SunRhodes-Doctor, Manju Schorr-Doctor, Matt Taylor-SafeTalk Trainer, Susie Perry-Fort Peck Tribes Chief Financial Officer at Poplar, MT., Jackie Hipp-Finance Officer for I.H.S. at Poplar, MT., Rose Akers-Contract Healthcare at Poplar, MT., Yvette Roubideaux-I.H.S. acting Director, Jon Tester-MT. U.S. Senator at Washington, D.C., Steve Daines-U.S. Senator at Washington, D.C., Pamuala Bing Perry-Health Care Recruitor at Poplar, MT., U.S. Dept. of Health and Human Services, Nonette Brown-Trauma Coordinator and EMS Director for NEMHS, Poplar, MT. and Wolf Point, MT. Indian, Vetrans Administration at Washington, D.C., Fort Peck Housing Authority, Rene Martell-Ft. Peck Tribes In-House Legal Counsel at Poplar, MT., Conrad Scott-FPHA Chairman

IV. Statement of Claim #5

1.) On or about July 1, 2014, July 1, 2014 Defendant(s) Barack Obama, Yvette Roubideax, Peg Norgaard, Clea Cagel, and Elaine Long acting pursuant to federal law and in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and rights under the 1st, 4th, 5th, 6th, and 14th Amendments of the United States Constitution by implementing a so-called "Non-Emergent

Point-of-service` payment process in Wolf Point, Poplar, and Culbertson, MT. on and near the Fort Peck Indian Reservation. As part of this new process, Native American patients who seek care for alleged non-emergent treatment will be required to pre-pay a $150.00, or the co-payment set forth by the patient's insurance company. All Native Americans who arrive to the emergency room receive a medical screening examination. With the information gathered through this exam consisting of filling-out forms, a non-medical personnell will compare the information to a non-applicable criteria standards set forth by the 'National Severity Index` for emergent care. If the Plaintiff and other Native Americans are determined not to have an emergency medical condition, the registration clerk will require the $150.00 co-payment in order to be seen. The defendants require the Plaintiff to bring a photo id, insurance cards, and medicaid or medicare cards. The Plaintiff and Native americans are required to pay in-cash, in-state checks, debit cards and major credit cards in violation of the plaintiff Fourstar's treaty right to health care because I.H.S. operates on a 'life or limb` policy.

2.) On or about July 17, 2014 Defendants Julie Bemer, John Gilbert, Marva Firemoon, Rick Kirn acted with a deliberate indifference to the Plaintiff's rights under treaty and U.S. Constitution in regards to the illegal $150.00 co-payment. Bemer said there's no way for I.H.S. to reimburse out of pocket expenses paid to the emergency rooms. Gilbert said he's received 'descriptions` of 'people` seen at the ER; they can't and are not turning any 'patients` away 'until they are evaluated. In light of I.H.S. 'life or limb` policy, defendant Rick Kirn alleged NEMHS "ate alot of fees". Defendant Marva Firemoon she agrees with the $150 charge by the ER. She said all the health facilities need to come together with no competition. The defendant(s) Julie Bemer, John Gilbert recruited students from the University of Minnesota to replace doctors, dentists, and nurses as listed in the listed Defendant(s) to negligently provide inadequate health care to the Plaintiff, to include so-called 'Telehealth Nurse Coordinator`. Defendants Carla Lovan and Barbara Toves illegally imposed a 40% tax on insurance companies that sell cateract plans by providing monthly data to the Area Affordable Care Act Coordinator.

3.) On or about, July 3, 2014 Defendant Peg Norgaard acted with a deliberate indifference to the Plaintiff Fourstar's rights under treaty and the U.S. Constitution by implementing on the Fort Peck Indian Reservation a so-called Patient Portal Program as part of Northeast Montana Health Services' push to answer a national call inapplicable to the Plaintiff Fourstar pursuant to federal Stimulus Act, the American Recovery and Reinvestment Act of 2009 that included provisions, through the HITECH Act, to provide financial incentives to healthcare providers for the adoption and use of health information te-

chnology. The Act also stipulated that eligible healthcare organizations, such as NEMHS, would be able to qualify for financial incentives by demonstrating "meaningful use" of electronic health record technology, starting in 2011 and ending in 2016. During stage 1 of meaningful use guidelines, NEMHS received $2.8 million from medicaid and $763,000 from medicare and began using Cerner technology for their electronic health records in violation of Plaintiff privacy rights and rights under treaty and U.S. Constitution in a on-going common-scheme with defendant Barack Obama.

4.) On or about August 14, 2014 Defendant(s) Fort Peck Tribal Executive Board (TEB) acted with a deliberate indifference and in a on-going common scheme with Yvette Robideaux and Barack Obama to violate the Plaintiff Victor C. Fourstar, Jr.'s rights under treaty and the U.S. Constitution by illegally imposing a tax on the Plaintiff by requiring him, and the Tribes to enroll their employees in a health care insurance plan by January 2015 or suffer a penalty. Councilman Dana Buckles said he researched the Affordable Care Act and estimated that it would cost the Tribes around $3.9 million to pay for health insurance tribal employees. The requirement caused, in part, the plaintiff to be denied $300 tribal percaps for his children's school clothes and just compensation.

5.) On or about August 22, 2014 Defendant(s) Jackie Hippe, Rose Akers, Vetrans Administration, Julie Bemer, Indian Health Services acted with a deliberate indifference and in a on-going common scheme to violate the Plaintiff Victor C. Fourstar, Jr.'s rights under Treaty and the U.S. Constitution by illegally entering into a VA-I.H.S. reimbursement agreement that resulted in tribal and I.H.S. facilities to collect approximately $5 million in reimbursements from the VA so far. I.H.S. implemented the agreement in all its federal sites, and the VA is working to enter into agreements with tribal sites, according to a report to Tribes from defendant Yvette Roubideaux - acting directo. fo I.H.S.

6.) On or about September 18, 2014 Defendant Jon Tester acted with a deliberate indifference & in a on-going common scheme to violate the Plaintiff Victor C. Fourstar, Jr.'s rights under treaty and the U.S. Constitution by illegally introducing legislation to permanently fund the Special Diabetes Program for Indians (SDPI) that purportedly helps develope local initiatives to treat and prevent the disease. Ignoring treaty obligations to provide the Plaintiff heathcare, defendant Tester purports the legislation will provide important resources to improve the health of Native Americans.

7.) On or about October 2, 2014 Defendant(s) Barack Obama and Yvette Robideaux acted in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under Treaty and under the United States Constitution by using Affordable Care Act funds in the amount of $1.5 million or five years to enable the Fort Peck Community College to develop a so-called 'comprehensive' worksite wellness program within the Fort Peck Community College,

Fort Peck Tribes and Poplar, MT. School District that effectively reduces the already diminished quality of care provided to the Plaintiff and indians under the guise of "holistic approach" to population health and wellness. Overall, the U.S. Department of Health & Human Services awarded $11.2 million in 22 grants to "prevent" heart disease, diabetes, stroke, and associated risk factor in American Indian tribes and Alaska Indian tribes.

8.) On or about September 25, 2014 Defendants Fort Peck TEB acted in a on-going common-scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under treaty and the U.S. Constitution by by voting to accept a $36,000 federal Emergency Management Services grant for 2014-2015 fiscal year to illegally perpetuate the 1976 National Emergencies Act and 1033 Transport Program that militarizes Policing that will result in severally diminished health care services to the plaintiff and suspension of enviromental laws and enabling the government to hydrofrack oil on the "high risk" Fort Peck Indian lands and construct the Keystone XL Pipeline Project under watch of militarized policing.

9.) On or about September 25, 2014 Defendants Fort Peck TEB acted in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under Treaty and the U.S. Constitution by approving of an agreement between the Montana State University Nursing Program and the Tribes, which will allow a nursing project through the Health Promotion Disease Prevention Program. The Tribes and HPDP is hosting the MSU nursing students in the fall of 2014 and spring of 2015 and will cause the Plaintiff and his children to suffer inadequate & already diminished health care services.

10.) On or about September 25, 2014 Defendants Fort Peck TEB, Nonette Brown acted in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under Treaty and the U.S. Constitution by securing a federal "Tribal Transportation Program Safety Funding" award in the amount of $180,000 to help meet the needs of "several" emergency response "entities" who utilize the roads systems on the reservation focusing on "emergency service needs" to illegally perpetuate the 1976 National Emergencies Act & 1033 Transport Program that Militarizes Policing that collectivey will illegally enable a suspension of enviromental laws and enabling the government to hydrofrack oil on the "high risk" Fort Peck Indian lands and enable construction of the Keystone XL Pipeline Project under watch of militarized policing and government control.

11.) On or about June 9, 2014 Defendant(s) Fort Peck TEB, Fort Peck Housing Authority (FPHA),

Renee Martell, Conrad Scott did intentionally and Knowingly use federal Housing $ Urban Development funds to act in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and rights under the U.S. Constitution, by approving and implementing a "Drug Elimination Policy" that prejudicially states: "Any person who resides in a dwelling unit under the control and management of the Housing Authority shall be immediately evicted if he/she or a resident family member admits to or is convicted by a court of proper jurisdiction of committing any of the following illegal acts on or off the premises of the dwelling unit... any unit under the control and management of the Fort Peck Housing Authority may be tested for methamphetamine if there is reasonable suspicion of use in the unit. If unit tests positive for meth, the resident family [will immediately be evicted from the home without a right to file a grievance]". Defendant Rene Martell said that FPHA has a burden of proof to meet, and that if a house tests positive, the tenants are in violation of their lease agreement and there's the 3-day notice to evict. If there's no eviction, the court process starts. Martell and FPHA could not answer on how long a house has to be hot for meth, and when do houses get condemned for being a health hazard. Defendant Conrad Scott conceded "If a house tests "hot" for meth, you can't tell who used it, whether the drug dissipates, and how long that would take," he said, adding that this has been hard and the people are coming to the council if they are being evicted for drugs. No one Knew how long meth residue stays on the walls of a house, and that's a major concern.

12.) On or about August 22, 2014 Defendant(s) Jonathan Gilbert, Indian Health Service, Roxanne Gourneau did intentionally and Knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and Sweet Grass Treaty and rights under the U.S. Constitution, by accepting $609,000 from Congress that will allow IHS Clinics to put an additional $1 million to fund "purchased referred care" - the new term for contract health care. Defendant Jonathan Gilbert deceitfully alleged without authority under treaty that Fort Peck Reservation is in a "crisis situation" due to the problems caused by drug abuse - namely meth - which is having a heavy impact on funding. The scheme to put FPHA under a false "state of emergency" and to FPHA under the Indian Education $ Self-Determination Act by Roxanne Gourneau is illegally designed to invoke the 1976 National Emergencies Act and 1033 Transport Program that militarizes Policing, while at the same time putting FPHA under "Central Control" in Phoenix, AZ.

Page 3, Continued, Section III. Defendants:

III.

A. Defendant: Wolf Point School District #45-45A is employed as School Board members (as listed in Claim #4) at Wolf Point, montana

B. Additional Defendants: Montana State Legislatures, Roxanne Gourneau - TEB member at Poplar, MT., Patt Iron Cloud - TEB member at Poplar, MT., Rick Kirn - TEB member at Poplar, MT., Garrett Big Leggins - TEB member at Poplar, MT., Roosevelt County

IV. Statement of Claim #6:

1.) On or about November 6, 2014 Defendant(s) unknown montana State Legislatures did intentionally and Knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and under the Sweet Grass Treaty and rights under the U.S. Constitution and rights under the Voting Rights Act by by putting Montana State Legislative Referendum 126 (LR-126) on the mid-term election ballot that, if passed, would place unfair burdens on the Native American Plaintiff Fourstar, seniors, youth, and working families to register and cast a vote on Election Day. Locally, in Roosevelt County, LR-126 received 1,149 votes in support and 1,448 opposed.

2.) On or about 2013 Defendants Wolf Point School District #45-45A did intentionally and Knowingly act in a on-going common scheme and with a deliberate indifference to the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and under the Sweet Grass Treaty and rights under the U.S. Constitution and rights under the Voting Rights Act by drawing up the districts to favor the non-native candidates for Wolf Point, MT. School District #45-45A Board and illegally suppressing the Plaintiff Fourstar's native american vote in violation of the plaintiff's rights.

3.) On or about October 23, 2014 Defendant(s) Roxanne Gourneau and Patt Iron Cloud

did intentionally and Knowingly act in a on-going common scheme to violate the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties and rights under the Sweet Grass Treaty, the Voting Rights Act, the Indian Civil Rights Act and rights under the U.S. Constitution by illegally interpreting the 1960 Fort Peck Tribal Constitution & By-Laws and the Robert Rules of Order to cast a vote as a sitting and former Vice-Tribal Chairwoman(s) stating "This is the people's Vice-Chair and I Know nothing in the Constitution that says, 'no', she can't vote". She also wanted to see "clear and convincing" information that Robert's Rules of Order is being violated in her casted votes, said Defendant Gourneau. Defendant Iron Cloud said she made a motion as vice-chair at committee because two of the five council members at the meeting left, and with only three remaining, business would have stopped. Defendant Rick Kirn said "It's up to this body and it can happen if we take it to the people". Defendant Garrett Big Leggins illegally brought issue and suggested amendments establishing candidates for Tribal Chairman should be able to choose who they want as a running mate, meaning if the chair is elected, the Vice-chair candidate running with that candidate would also be elected. For past, present and future removals from office, an amendment suggested was that anyone who has been removed from tribal office by the TEB cannot run for office again. Former Chairman John Morales, Jr. was an example vindictively used by defendant Big Leggins.

4.) On or about October 27, 2013 and November 6, 2014 defendant(s) Fort Peck TEB and Roosevelt County did intentionally and Knowingly act in a on-going common scheme to violate the Plaintiff Victor C. Fourstar, Jr.'s rights under the 1851 and 1868 Fort Laramie Treaties, Sweet Grass Treaty, Voting Rights Act, Indian Civil Rights Act, and rights under the U.S. Constitution by using electronic voting in Tribal Elections and County elections under Indian Sufferage to manipulate and determine Tribal and County Election results by selected voting officials Rick Kirn, Wanda Kirn.